IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20CV403-GCM

| | |
|---|---|
| ATV BROADCAST, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| BAHAKEL COMMUNICATIONS, LTD., *et al*., | ) |
| Defendants. | ) |

This matter is before the Court upon the Plaintiff's Partial Motion to Dismiss Counts 2 - 4 of Defendants' Counterclaims. This motion has been fully briefed and is ripe for disposition.

## I. FACTUAL BACKGROUND

Plaintiff ATV Broadcast, LLC ("ATV") is a telecommunications consulting group that connects local television stations with multichannel video programming distributors ("MVPDs"), cable and satellite televisions providers such as Comcast, DirecTV, and DISH. (Compl. ¶ 1). ATV manages the distribution of broadcast television stations, primarily through negotiating carriage agreements so that the MVPDs have "retransmission consent" to carry the local television stations' signals. (*Id*.) The Defendants individually own several local broadcast television stations. (*Id*. at ¶ 11).

ATV and the Defendants entered into a Consulting Agreement in July of 2008 whereby ATV exclusively represented Defendants in the negotiation and administration of retransmission consent agreements with MVPDs in exchange for monthly fees as well as commissions. (*Id*. at ¶¶ 14, 17, 22, 23). The Consulting Agreement was amended on multiple occasions to extend the term of the agreement and to reduce ATV's compensation. (*Id*. at ¶¶ 18, 28 – 63). Defendants

attempted to terminate the Consulting Agreement in December of 2019 by sending ATV a Termination Letter. (*Id.* at ¶¶ 67-68). The Termination Letter stated that ATV had committed a "material breach" by assigning a new representative to Defendants' account due to the terminal illness of Defendants' former primary ATV contact, Rick Thedwall. (*Id.* at ¶¶ 69-70). The letter maintained that ATV had failed to perform and/or oversee its services to Defendants with "able management" as required by the Consulting Agreement as a result of this new assignment. (*Id*. at ¶ 72). ATV subsequently filed this lawsuit alleging breach of contract and other claims relating to Defendants' alleged wrongful termination of the Consulting Agreement. Defendants counterclaimed for Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Constructive Fraud, and Unfair and Deceptive Trade Practices ("UDTP"). (Doc. No. 10). Plaintiff ATV seeks to dismiss all Defendants' Counterclaims except for the Breach of Contract claim.

## II. DISCUSSION

### A. 12(b)(6) Standard

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). The Court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff.*" Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). "However, legal conclusions pleaded as factual allegations, unwarranted inferences, unreasonable conclusions, and naked assertions devoid of further factual enhancement are not entitled to the presumption of truth." *Id.* (citations and quotations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

2

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility requires allegations showing more than a "sheer possibility that a defendant has acted unlawfully." *Id.* "[T]he complaint must allege sufficient facts to establish th[e] elements [of the claim]," and "must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570).

## B. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff seeks to dismiss Defendants' counterclaim for breach of implied covenant of good faith and fair dealing, arguing that it is merely duplicative of their claim for breach of contract. "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 333 S.E.2d 299, 305 (N.C. 1985) (internal quotation marks omitted). When a claim for breach of an implied covenant of good faith is based on factual allegations similar to those alleged in support of a breach of contract claim, the implied covenant claim is "part and parcel" of the breach of contract claim and will rise and fall with the breach of contract claim. *Murray v. Nationwide Mut. Ins. Co.*, 472 S.E.2d 358, 368 (N.C. Ct. App. 1996). Plaintiff, citing *Niloy, Inc. v. Lowe's Companies, Inc*., No. 5:16-CV-00029-RLV-DCK, 2017 WL 29338, at *7 (W.D.N.C. Jan. 3, 2017) and *Biosignia, Inc. v. Life Line Screening of Am., Ltd*., No. 1:12-cv-1129, 2014 WL 2968139, at * 5 (M.D.N.C. July 1, 2014), argues that where a claim for breach of the implied covenant of good faith arises from the same underlying facts as a breach of contract claim, the party is limited to a single recovery of damages, and dismissal of the freestanding breach of implied covenant of good faith claim is

3

appropriate. The North Carolina Business Court, however, has rejected this argument, clarifying that "North Carolina state court decisions considering good faith and fair dealing claims that are 'part and parcel' of breach of contract claims . . . have concluded that the two claims merely stand or fall together, not that the independent good faith and fair dealing claim should necessarily be dismissed as duplicative." *Anesthesiology Consultants, PLLC v. Rose*, No. 17 CVS 9002, 2019 WL 3948935, at *8 (N.C. Super. Aug. 20, 2019) (unpublished) (citing *Haigh v. Superior Ins. Mgmt. Grp.*, 2017 WL 4848154, at *4 (N.C. Super. Ct. Oct. 24, 2017) (unpublished) (denying motion to dismiss despite concluding "the claim for breach of contract is the same as the breach of the implied covenant of good faith and fair dealing.")). As Defendants' breach of contract counterclaim is not subject to dismissal, the claim for breach of implied covenant of good faith and fair dealing will likewise be allowed to remain.

### C. Constructive Fraud

To survive a motion to dismiss on a claim for constructive fraud under North Carolina law, Defendants must sufficiently allege that: (1) a relationship of trust and confidence existed between the parties; (2) ATV took advantage of that position of trust and confidence in order to benefit itself; and (3) Defendants were injured as a result. *See White v. Consol. Planning, Inc.*, 603 S.E.2d 147, 156 (N.C. Ct. App. 2004). An allegation that a fiduciary relationship or a relationship of trust and confidence existed is a legal conclusion, which is not entitled to an assumption of truth on a motion to dismiss. *See Bonham v. Wolf Creed Acad.*, 767 F.Supp.2d 558, 567 (W.D.N.C. 2010); *Hunter v. Guardian Life Ins. Co. of Am.*, 593 S.E.2d 595, 599 (N.C. Ct. App. 2004).

The Fourth Circuit has recognized that "North Carolina is reluctant to impose 'extra-contractual fiduciary obligations' in the context of general commercial contracts; thus, even

4

Case 3:20-cv-00403-GCM   Document 27   Filed 01/13/21   Page 4 of 8

when parties to an arms-length transaction have reposed confidence in each other, no fiduciary duty arises unless one party thoroughly dominates the other." *South Atlantic Ltd. P'ship of Tenn. L.P. v. Riese*, 284 F.3d 518, 533 (4th Cir. 2002). If the parties' only relationship arises from contract, then no special confidence or fiduciary duty is created. *Lawley v. Liberty Mut. Grp., Inc.*, No. 5:11-CV-00106-RLV, 2012 WL 4513622, at *6 (W.D.N.C. Sept. 28, 2012) (dismissing constructive fraud claim where plaintiff failed to cite in the complaint "any language from the [contract] which would support her contention that a confidential or fiduciary relationship existed," and failed to describe the nature of the "special confidence" placed in the defendants). Moreover, where the parties involved are "mutually interdependent businesses with equal bargaining positions who dealt at arms-length," courts may determine as a matter of law that no confidential or fiduciary relationship exists. *Trana Discovery, Inc. v. Southern Research Institute*, No. 5:13-cv-848-F, 2014 WL 5460611, at *5 (E.D.N.C. Oct. 27, 2014) (citing *Broussard v. Meineke Disc. Muffler Shops, Inc*., 155 F.3d 331, 348 (4th Cir. 1998).

The Court finds that the Defendants herein have failed to plausibly allege the existence of a fiduciary or other comparable relationship. No language in the Consulting Agreement itself creates any such relationship. In fact, the Agreement explicitly states that: "The relationship of [Defendants] and ATV established in this Agreement is that of principal and independent contractor." (*See* Doc. No. 1-2 at § 4). Though the Counterclaim alleges that ATV was Defendants' "representative," the plain language of the Agreement states otherwise: "ATV shall have no power or authority to act as agent, employee, or in any other capacity to represent or act on behalf of [Defendants]… ." (*Id*.) Defendants retained a broad right of refusal under the Consulting Agreement, which afforded Defendants "the right…to refuse any offer or proposed contract, agreement or arrangement presented" by ATV. (*Id*. at § 2). Not only did the Agreement

5

afford Defendants this right of refusal, Defendants also enjoyed the right to retain the outside counsel of their choice to review the ATV's proposed retransmission agreements, and to have ATV pay for these reviews. (Amendment No. 4 to the Consulting Agreement, Doc. 1-6, §2). Defendants' allegations regarding a fiduciary relationship thus plainly contradict the written terms of the Consulting Agreement.

Moreover, Defendants offer no explanation for how, apart from the Consulting Agreement, a fiduciary relationship was created between Defendants and ATV. The parties are all sophisticated business entities who operated at arms' length for over a decade pursuant to their Consulting Agreement. In fact, the Defendants allege that they are business entities with nearly seven decades of experience in television broadcasting industry. (*See* Counterclaim, Doc. No. 10, ¶12). No special relationship with one another apart from this Agreement has been alleged. There is no allegation that one holds any dominance over another. Accordingly, Defendants' counterclaim for constructive fraud fails as a matter of law.

### D. Unfair and Deceptive Trade Practices

"[W]here a contract governs the relationship between the parties, the rights and remedies of the parties lie in contract law and not in the UDTPA." *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 584 (E.D.N.C. 2020), *appeal dismissed*, No. 20-1262, 2020 WL 5203205 (4th Cir. Aug. 31, 2020). The facts Defendants allege herein all relate specifically to the parties' contracts and the obligations thereunder. Indeed, this entire dispute, and the parties' relationship as a whole, stem from the parties' original agreement and its amendments. Count Four identifies no additional or extra-contractual conduct that gives rise to that claim. Defendants merely state, in conclusory fashion, that "[t]he aforementioned conduct of ATV . . . constitutes unfair and

6

deceptive trade practices in and affecting commerce in the State of North Carolina, in violation of N.C.G.S. § 75-1.1." (Counterclaim, at ¶ 58).

When the crux of a dispute is contractual, a claim under the UDTPA is generally not recognized, and a showing of "substantial aggravating circumstances" is required for the claim to proceed. *Broussard*, 155 F.3d at 347. Generally, where courts have found such substantial aggravating circumstances, the underlying claims have "involved forged documents, lies, and fraudulent inducements." *BioSignia, Inc.*, 2014 WL 2968139, at *6 (dismissing UDTPA claim arising from a contract between the parties). "Even an intentional breach, if it relates only to the parties' understanding of and performance under the contract, is not actionable under the UDTPA." *Id.* at *9 (citing *Canady v. Crestar Mortg. Corp.*, 109 F.3d 969, 975 (4th Cir. 1997) (noting that even an intentional breach is not sufficient for liability to attach under the UDTPA)).

Defendants' counterclaim contains no such "substantial aggravating circumstances." Defendants make no allegation suggesting that the Consulting Agreement was fraudulently induced, and, not only did the agreement last for more than a decade (*see* Counterclaim, at ¶ 17), the entirety of the counterclaim involves Defendants' allegations that Defendants should have received additional benefits to which they were entitled under the Consulting Agreement. Even to the extent Defendants claim that ATV's purported breaches of the Agreement were intentional, such alleged breaches clearly relate only to the parties' performance of the contract, and thus, as a matter of law, cannot constitute "substantial aggravating circumstances" under the UDTPA. *See Broussard*, 155 F.3d at 347.

7

Case 3:20-cv-00403-GCM   Document 27   Filed 01/13/21   Page 7 of 8

IT IS THEREFORE ORDERED that Plaintiff's Partial Motion to Dismiss Counts 2 - 4 of Defendants' Counterclaims is hereby GRANTED IN PART AND DENIED IN PART, such that Counterclaims 3 and 4 are hereby dismissed.

Signed: January 13, 2021

Graham C. Mullen
United States District Judge